PIETRO BALBO, Plaintiff in Error, v. THE PEOPLE OF THE STATE OF NEW YORK, Defendant in Error.

*Challenge for principal cause and for favor — when properly overruled — when juror not disqualified by reason of his having formed an opinion — chapter 427 of 1873 — Confession not inadmissible because made while the prisoner is in illegal custody — Right to arrest one who has committed murder, without process.*

Upon the trial of the plaintiff in error, an Italian, upon an indictment for murder, a juror was challenged for principal cause, on the ground that he had formed an opinion prejudicial to the prisoner. The juror having been sworn testified, that at the time of the occurrence he had read of it in a newspaper and had then formed an opinion, which he supposed he still had ; that he knew nothing about the case, and did not suppose he had any impression on his mind which would prevent his acting fairly and impartially; that he had no doubt he could give a verdict upon the evidence that should come from the witnesses, without being influenced or biased by any opinion.

*Held*, that the court properly overruled the challenge for principal cause.

The prisoner's counsel then challenged the juror to the favor, and requested that the examination of the juror, already taken, be made applicable thereto, which request was granted. The juror then testified, that he had some business with Italians, and was not particularly fond of them ; did not think much of them, judging from those we have here ; that his opinion, as to the guilt or innocence of the prisoner, was positive and clearly marked at the time, and he thought it was still ; that he had not talked the matter over, but had probably read the newspaper to his family ; that he thought the statements he read, and from which he formed his opinion, were the evidence taken on the coroner's inquest ; that he had no particular interest in the case or knowledge of its circumstance ; that he would believe a contradiction if he read it in the next day's paper ; that he had an impression rather than an opinion ; that he read the account casually, and it slipped out of his mind and was afterwards revived ; that it would require strong evidence to remove the opinion he then entertained ; that he believed he could give full·weight and effect to the evidence as though he had no opinion. The court, upon this evidence and "from observation of the appearance of the juror, his age, intelligence, his manner on the stand, and his answers to the questions," overruled the challenge. *Held*, no error.

The prisoner, after the killing, fled from the city of New York, where it occurred, finally stopping at Wheeling, W. V., where he was arrested by an officer of the New York police force, with the co-operation and assistance of the local police, but without any process, put in irons and taken to New York ; while on the cars he was asked by the officer if he killed his wife and said, " Yes."

*Held*, that conceding that he was illegally held in custody at the time he made the confession, that fact did not invalidate it or render it inadmissible.

*Quære*, whether at common law the arrest of a prisoner guilty of a felonious homicide, without process, is not lawful as against him, wherever made.

Writ of Error to the Oyer and Terminer to review the conviction and sentence of the plaintiff in error of murder in the first degree. The prisoner was charged with killing his wife, at the city of New York, on September 30, 1879.

*F. S. Buckingham*, for the plaintiff in error.

*B. K. Phelps*, for the defendant in error.

Davis, P. J. :

Three grounds of error are alleged on the part of the prisoner :

*First.* That his challenge of Edward H. Betts, one of the jurors, was improperly overruled.

*Second.* That the exception to the admission of the confessions of the prisoner should have been sustained ; and

*Thirdly.* That the evidence failed to show the premeditation and deliberation required by the statute to constitute murder in the first degree.

The juror Betts, when called was first challenged by the prisoner's counsel for principal cause, on the ground that he had formed an opinion prejudicial to the prisoner. He was sworn as a witness on that challenge, and testified after learning the nature of the case on trial that at the time of the occurrence he read of it in a newspaper, and had formed an opinion at the time ; that he supposed he had that opinion still ; that he knew nothing about the case, and did not suppose he had any impression on his mind which would prevent his acting fairly and impartially in the case. He was then asked : "Have you any doubt that you can give a verdict upon the evidence that shall come from the witnesses ?" He answered : "Certainly, I can do that. Q. Without being influenced or biased by any opinion ? A. I think so."

Upon this evidence the court overruled the principal challenge. He was then challenged to the favor, and the prisoner's counsel requested that the examination of the juror already taken be made applicable to the challenge to the favor. The request was granted. On further examination, he testified in substance that he had some business with the Italians ; that they were a race he was "not particularly fond of, and did not think much of judging from

those we have here ; " that his opinion, in regard to the guilt or innocence of the prisoner, was still in his mind, and it was a positive and clearly marked opinion at the time, and he thought it was still ; that he had not talked the matter over with any other person, but probably had read it to his family at the time in the morning paper ; that he thought he indistinctly remembered that the statements he read in the paper were the evidence taken before the coroner's inquest, and he thought it was from those statements that he formed his opinion ; that he read about it just as he read other items in the newspaper ; that he had no particular interest in the case, and had no knowledge of the circumstances of the case, except so far as he had read them in the papers ; that, if the statement which he saw in the papers was contradicted in the next day's paper, he would believe the contradiction ; that his impression was based upon the assumption that there probably is some truth in any report he saw in the papers ; that he made a distinction between an opinion and an impression ; that he should call it an impression as to the truth or falsity of what he saw in the newspapers, if he just read it casually and it slipped out of his mind and was then afterwards revived ; that he did not know that he had anything more than that in his mind about this case ; that he knew nothing about what the prisoner's defence was ; that all he remembered about it was that a man killed his wife in Rose street ; that it would require strong evidence to remove the opinion that he now entertained in regard to the case. To the court he answered that he did not mean to say anything different from what he had said before, that while he might have these views in his mind, he did not suppose it would bias or influence or prejudice him in any manner in the consideration of the evidence in the case ; that he believed it would not ; that he believed he could give full weight and effect to the evidence, the same as though he had no opinion.

Upon this evidence and as the case states " from observation of the appearance of the juror, his age, intelligence, his manner on the stand, and his answers to the questions," the court found that he was fair and impartial and unprejudiced, and held the challenge not true, to which the prisoner then and there excepted.

It is very clear, within all the cases since the enactment of

chapter 475 of the Laws of 1872 (Laws of 1872, p. 1133), that the challenge for principal cause was properly overruled. Indeed, no exception was taken to the decision of the court on that challenge on behalf of the prisoner. At the request of the prisoner's counsel, all the evidence taken to that challenge was regarded as taken also upon the challenge to the favor.

The Court of Appeals, in *Greenfield* v. *People* (74 N. Y., 277), construed chapter 427 of the Laws of 1873 (Laws of 1873, p. 681), as providing that both challenges, for principal cause and to the favor, can be reviewed by an appellate court on questions of law and questions of fact. But this liberal construction of that statute does not change the duty of the court, in reviewing questions of fact, to consider that the trial court passes primarily upon the questions with great advantage of circumstances that cannot possibly appear in the return of the written evidence. That court has, as formerly triors always had, where the challenged juror was made the witness of the challenger, the opportunity of observing his appearance, demeanor and manner of testifying, and of being governed in some degree by those material circumstances. In this case, the bill of exceptions shows that the court passed upon the challenge as well "from observation of the appearance of the juror, his age, intelligence, manner on the stand and his answers to questions," as from the evidence offered on the challenge, and from these several things found as matter of fact that the challenge was not true. We have no doubt that this was a correct mode of discharging the duty of the court in passing upon the challenge to the favor; and, although some of the phrases of the several statements of the witness might, if detached and considered by themselves, bring the case within *Greenfield* v. *The People*, above cited, yet, considered as a whole in the light of the circumstances above mentioned, we are of opinion that the court properly held that they failed to establish that the juror was not legally competent, within the provisions of chapter 475 of the Laws of 1872, above cited.

The juror seemed to be conscientious and intelligent, and although some of his answers seem to conflict with others, yet they are all easily reconciled to the general idea that his reading of the circumstances of the killing had produced an impression

on his mind to the effect that the prisoner had killed his wife, and that that impression, on the circumstances being again recalled, was revived, and would remain until shown to be without foundation, but that it would not affect his ability to pass upon the evidence offered in the case, and determine the question of the guilt or innocence of the prisoner without being influenced or affected by his impression or opinion.

It cannot be doubted but that the Legislature intended that the rule, which in terms is applied to challenges for principal cause, should be extended by the courts to challenges to the favor, and that where the court was able to find from the evidence on the latter challenge that the juror is indifferent, within the rule provided by the act of 1872, he should be accepted. Any other construction makes the act a mere delusion, to embarrass and hinder the administration of justice. We consider the facts of this case clearly within the case of *Pender* v. *The People* (18 Hun, 560), and *Cox* v. *The People* *, lately decided by this court, and that no error was committed by the court below in finding the challenge not sustained.

As to the second alleged ground of error, the facts appear to be that the prisoner, immediately after the killing of his wife, left the city and went by rail to various points, finally stopping at Wheeling, West Virginia. He was tracked to the latter place by an officer of the New York police force, and there, with the approbation and assistance of the local police of Wheeling, he was arrested without process, put in irons and started for New York. While on the cars he was asked by the officer if he killed his wife, and he answered "Yes," and added that "she did not like him, and when he would go near her she would say : 'Go away, you black man I don't like you.'" He also stated that he ",only gave her one jab; only cut her once."

It appeared affirmatively, by the testimony of the officer. that he did not hold out any inducement, or make any promises or threats of any kind to lead the prisoner to make the confession. Two points are made on this state of facts : The first point is in substance, that the confession was not a voluntary one because of

* See post page 430.

the attending circumstances under which it was made, and there-
fore that it should not be received in evidence.

It is urged, secondly, that the arrest of the prisoner at Wheel-
ing and his transportation under arrest to this city were unlaw-
ful, and that no confession made while in such unlawful custody
can be received.  The arrest was not however, unlawful under
the laws of this State which have no extra territorial force.
Whether it was unlawful or not under the laws of West Virginia,
would depend upon statutes which have not been brought to our
notice.

It is not clear that at common law the arrest, without process,
of a prisoner guilty of felonious homicide, is not lawful as
against him wherever made.  But this question need not be
discussed.

In the case of *Rex* v. *Thornton* (1 Moody C. C., 27), which
was a decision upon the submission of a case reserved presenting
this exact proposition, it was held that the confession was admis-
sible though obtained from a person in illegal custody ; and we
think, upon sound principle that the mere naked fact of the
illegal custody of an accused party cannot of itself be deemed
sufficient ground for the exclusion of his confessions.  It has
been held in several cases in this State, that the confession of a
party charged with crime while under arrest or in confinement,
is competent as evidence against him, unless obtained by the
inducement of threats or promises.  (*People* v. *Rogers*, 18 N. Y.,
9; *People* v. *Wentz*, 37 N. Y., 303, and cases therein cited ; *Cox*
v. *People\**.)  These suggestions dispose of both of the points ; and
it may be added also that there were no circumstances preceding
the confession so likely to make it untrue, that the court was
called upon to exclude it from the jury.  (*People* v. *Wentz*,
*supra.*)

The exception to the evidence of confession in this case were
not therefore well taken.

Upon the third alleged error, to wit : that there was not suffi
cent evidence to establish the deliberation and premeditation
required to constitute the crime of murder in the first degree, we
are of opinion that there was evidence sufficient to justify the

* See post page 430.

·court in sending that question to the jury. The evidence was submitted to the jury, by the court, in an extremely clear and impartial manner, and no exceptions were taken to the charge.

The jury had a right to find deliberation and premeditation from the purchase by the prisoner of the knife with which the killing was done, not long before the commission of the crime ; from its use in the night time, and in the bed of the deceased ; from the unhappy relations existing between the prisoner and his wife, and her family ; from his jealousy of her, which seemed to be not wholly without probable cause ; from the nature, the great number, and the terrible severity of the wounds inflicted ; from the circumstances though slight tending to show previous preparation for flight, and from the undisputed fact of his flight immediately after the perpetration of the crime. We are unable therefore to see any error which calls for our interference in ·this case.

The judgment and conviction should be affirmed.

BRADY and BARRETT, JJ., concurred.

Judgment and conviction affirmed.